IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Joe Edens, Jr. and Village at Battery Creek, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> Synovus Financial Corporation and Synovus Bank, <br><br> Defendants. | Civil Action Number: 3:17-cv-0806-MBS <br><br> **ORDER AND OPINION** |

This matter involves disputes regarding certain investments and loans between and among Plaintiffs Joe Edens, Jr. ("Edens") and Village at Battery Creek, LLC ("Battery Creek") (together "Plaintiffs") and Defendants Synovus Financial Corporation and Synovus Bank (together "Defendants"). Plaintiffs filed a complaint on December 15, 2016, in the Court of Common Pleas for Richland County, South Carolina, asserting claims against Defendants for (1) fraud in the inducement (First Cause of Action), (2) breach of contract (Second Cause of Action), (3) breach of contract accompanied by a fraudulent act (Third Cause of Action), (4) fraud (Fourth Cause of Action), (5) constructive fraud (Fifth Cause of Action), (6) misrepresentation (Sixth Cause of Action), (7) promissory estoppel (Seventh Cause of Action), (8) violation of the South Carolina Unfair Trade Practices Act ("SCUPTA") (Eighth Cause of Action), and (9) breach of fiduciary duty (Ninth Cause of Action). Plaintiffs also seek injunctive relief (Tenth and Eleventh Causes of Action). Defendants removed the action to federal court on the basis of diversity jurisdiction on March 27, 2017. ECF No. 1; *see* 28 U.S.C § 1332.

On March 31, 2017, Defendants filed a motion to dismiss or, in the alternative, to compel

arbitration and stay the federal proceedings. ECF No. 6. Defendants argue that Plaintiffs agreed to binding arbitration for disputes related to the loan. ECF No. 6-1 at 3. Edens disputes the arbitration is binding on him individually. ECF No. 9 at 6. Plaintiffs also assert that the arbitration agreement is unconscionable, or, alternatively, that Plaintiffs' claims are not subject to arbitration. ECF No. 9 at 1. The court held a hearing on the motion on August 28, 2017.

## FACTUAL BACKGROUND

Edens served on the National Bank of South Carolina ("NBSC") board of directors beginning in 1969. ECF No. 1-1 at ¶ 6. Subsequent to a merger in 1995, NBSC became a division of Synovus Bank, which is a wholly-owned subsidiary of Synovus Financial Corporation. *Id.* at ¶ 4. After the merger, two of Defendants' executives requested Edens participate in Defendants' Family Asset Management ("FAM") program. *Id.* Edens eventually invested $7,000,000 to be managed through the FAM program. *Id.* Edens alleges the value declined over $1,000,000 within nine months due to "very questionable and risky investments." ECF No. 9 at 3.

At some point prior to September 10, 2009, Defendants' representatives began discussing with Edens the purchase of an uncompleted residential construction project in Port Royal, South Carolina (the "Project"). ECF No. 1-1 at ¶ 9. Defendants had advanced over $12,000,000 to a developer who had started but not completed the Project. Defendants were beginning foreclosure proceedings on the Project and wished to sell it "as is" for $3,000,000. Defendants' representatives urged Edens to consider buying the note and mortgage covering the Project. *Id.* According to Edens, Defendants "strongly solicited [him] to 'help the bank out,'" though he had never been involved in residential real estate development. ECF No. 9 at 4. Defendants' representatives allegedly promised Edens that after they obtained a settlement with the developer, Edens would have no personal liability on the potential loans or financing. *Id.* at ¶ 10. Edens alleges that Defendants

2

promised to loan him $3,000,000 to purchase the note and mortgage as well as advance a $1,500,000 line of credit and a $650,000 loan to finish eight units the developer had substantially completed. *Id.*

Edens agreed to take over the Project and thereafter formed Battery Creek. On September 10, 2009, Edens, as manager of Battery Creek, executed numerous agreements enabling Battery Creek to purchase the note on the Project. ECF Nos. 6-1 at 2; 10 at 3. Edens executed a personal guaranty on the loans. ECF No. 6-1 at 2. After Plaintiffs and Defendants executed the various documents, Defendants requested Edens keep his involvement in the Project a secret and refrain from visiting the Project until Defendants reached an agreement with the developer. *Id.* Edens states that negotiations between Defendants and the developer lasted over nine months. During this time the Project was not properly secured and was vandalized. *Id.* at 5. When Plaintiffs finally assumed control of the Project, they spent over $650,000 from the line of credit just to replace stolen items and repair damage done to the residential units. Plaintiffs and Defendants were unable to agree on any further construction loans. Edens contributed $1,000,000 out of pocket to complete the Project.

Plaintiffs allege that Defendants have since "undertaken a pattern and course of retaliation against" Plaintiffs by

> force placing insurance on the properties and charging Plaintiffs for the premiums some or most of which is kicked back to Defendants from the insurer, refusing to release parcels or units which have been sold from the master mortgage, despite repeated requests in writing, and charging or assessing, as well as refusing to remove, unwarranted fees or surcharges from the loan(s).

ECF No. 1-1 at ¶ 18.

At the hearing on August 28, 2017, Plaintiffs clarified that both Plaintiffs are requesting relief stemming from the loan documents and financing of the Project, as set forth in the First

promised to loan him $3,000,000 to purchase the note and mortgage as well as advance a $1,500,000 line of credit and a $650,000 loan to finish eight units the developer had substantially completed. *Id.*

Edens agreed to take over the Project and thereafter formed Battery Creek. On September 10, 2009, Edens, as manager of Battery Creek, executed numerous agreements enabling Battery Creek to purchase the note on the Project. ECF Nos. 6-1 at 2; 10 at 3. Edens executed a personal guaranty on the loans. ECF No. 6-1 at 2. After Plaintiffs and Defendants executed the various documents, Defendants requested Edens keep his involvement in the Project a secret and refrain from visiting the Project until Defendants reached an agreement with the developer. *Id.* Edens states that negotiations between Defendants and the developer lasted over nine months. During this time the Project was not properly secured and was vandalized. *Id.* at 5. When Plaintiffs finally assumed control of the Project, they spent over $650,000 from the line of credit just to replace stolen items and repair damage done to the residential units. Plaintiffs and Defendants were unable to agree on any further construction loans. Edens contributed $1,000,000 out of pocket to complete the Project.

Plaintiffs allege that Defendants have since "undertaken a pattern and course of retaliation against" Plaintiffs by

> force placing insurance on the properties and charging Plaintiffs for the premiums some or most of which is kicked back to Defendants from the insurer, refusing to release parcels or units which have been sold from the master mortgage, despite repeated requests in writing, and charging or assessing, as well as refusing to remove, unwarranted fees or surcharges from the loan(s).

ECF No. 1-1 at ¶ 18.

At the hearing on August 28, 2017, Plaintiffs clarified that both Plaintiffs are requesting relief stemming from the loan documents and financing of the Project, as set forth in the First

through Eighth Causes of Action. Edens individually is requesting relief stemming from his investment in the FAM program, as set forth in the Ninth Cause of Action.

## DISCUSSION

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. To compel arbitration, a defendant must demonstrate (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision that purports to cover the dispute; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the plaintiff to arbitrate the dispute. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002); *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). "To decide whether an arbitration agreement encompasses a dispute[,] a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 319 (4th Cir. 1988).

In interpreting arbitration agreements, the court must resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Even though courts view arbitration agreements favorably, an "underlying agreement between the parties to arbitrate" must exist. *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Written arbitration agreements are required because parties are

4

agreeing to waive their fundamental right to have a court decide the merits of their disputes. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

Law/Analysis

A.  <u>Whether a Written Arbitration Agreement Exists as to the FAM Program</u>

The Ninth Cause of Action alleges that Defendants "breached and violated their fiduciary duties owed to Plaintiff Edens with regard to his investment in the FAM." ECF No. 1-1, 18. Defendants have not provided an agreement requiring Edens to submit his breach of fiduciary duty claim to arbitration. Accordingly, the court declines to order arbitration of the Ninth Cause of Action. Plaintiff's alleged damages for the Ninth Cause of Action exceed $1,000,000; therefore, the court retains diversity jurisdiction over the claim.

B.  <u>Whether Written Arbitration Agreement Exists as to the Loans on the Project</u>

As pertinent to this motion, the arbitration clause in the loan documents appertaining to the purchase of the Project provides:

> 8.15 UPON DEMAND OF ANY PARTY HERETO, WHETHER MADE BEFORE OR AFTER INSTITUTION OF ANY JUDICIAL PROCEEDING, ANY DISPUTE, CLAIM OR CONTROVERSY ("DISPUTES") ARISING OUT OF, CONNECTED WITH OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENTS SHALL BE RESOLVED BY BINDING ARBITRATION AS PROVIDED HEREIN. Institution of a judicial proceeding by a party does not waive the right of that party to demand arbitration hereunder. Disputes may include, without limitation, tort claims, counterclaims, disputes as to whether a matter is subject to arbitration, claims brought as class actions, claims arising from Loan Documents executed in the future, or claims arising out of or connected with the transaction reflected by this document.
>
> Pursuant to the Federal Arbitration Act, or if it is deemed not to apply, the South Carolina Uniform Arbitration Act, arbitration shall be conducted under and governed by the Commercial Financial Disputes Arbitration Rules (the "Arbitration Rules") of the American Arbitration Association (the "AAA"). All arbitration hearings shall be conducted in Columbia, South Carolina. All applicable statutes of limitation shall apply to a Dispute. A judgment upon the award may be entered in any court having jurisdiction.

ECF No. 6-2, 3-4.[1]

C.  Whether Plaintiffs' First through Eighth Causes of Action Are Arbitrable

Plaintiffs contend that their claims are not arbitrable. Whether the parties agreed to arbitrate a particular dispute is a question of state law governing contract formation. *Gibson v. Toyota Motor Sales, U.S.A., Inc.*, Civil Action No. 4:17-577-RMG, 2017 WL 4296723, *2 (D.S.C. Oct.12, 2017) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The party resisting arbitration bears the burden of showing that the issue is unsuitable for arbitration. Id. (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

Under South Carolina law, the determination of whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract. *Towles v. United HealthCare Corp.*, 524 S.E.2d 839, 846 (S.C. Ct. App. 1999). Where contract language is plain and capable of legal construction, that language alone determines the instrument's force and effect. *Stevens & Wilkinson of S.C. , Inc. v. City of Columbia*, 762 S.E.2d 696, 699 (S.C. 2014) (citing *Jordan v. Sec. Grp., Inc.*, 428 S.E.2d 705, 707 (S.C. 1993)).

Plaintiffs argue that their claims arise solely from the formation of the agreements and do not bear a significant relationship to the loan documents themselves. Plaintiffs further state that "fraud, constructive fraud, misrepresentation, and violations of SCUTPA" are "outrageous acts that are unforeseeable to a reasonable customer in the context of normal business dealings." ECF No. 9 at 15 (citing *Aiken v. World Fin. Corp.*, 644 S.E.2d 705 (S.C. 2007); *Partain v. Upstate Auto. Grp.*, 689 S.E.2d 602 (2010)). The court disagrees.

---

[1] At the hearing, Defendants provided the court with copies of additional loan documents. Plaintiffs opposed introduction of the loan documents. Plaintiffs do not dispute Defendants' argument that a similar arbitration clause was located in all loan agreements. *See* ECF No. 6-1 at 3 n.3.

As noted hereinabove, the various arbitration agreements provided, in substantially similar language, "Disputes may include, without limitation, tort claims, counterclaims, disputes as to whether a matter is subject to arbitration, claims brought as class actions, claims arising from Loan Documents executed in the future, or claims arising out of or connected with the transaction reflected by this document." The court concludes that the plain wording of the arbitration clause encompasses Plaintiff's Causes of Action One through Eight.

D.   Whether the Arbitration Clause is Unconscionable

Plaintiffs argue that the arbitration clause is unconscionable and therefore not enforceable. "Under the FAA, an arbitration clause is separable from the contract in which it is embedded and the issue of its validity is distinct from the substantive validity of the contract as a whole." *Munoz v. Green Tree Fin. Corp.*, 542 S.E.2d 360, 364 (S.C. 2001) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)). A court may invalidate an arbitration provision on state law "contract defenses, such as fraud, duress, and unconscionability." *Zabinski v. Bright Acres Assocs.*, 553 S.E.2d 110, 116 (S.C. 2001). "In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *One Belle Hall Prop. Owners Ass'n, Inc. v. Trammell Crow Residential Co.*, 791 S.E.2d 286, 291 (S.C. Ct. App. 2016) (citing *Simpson v. MSA of Myrtle Beach*, 644 S.E.2d 663, 668 (S.C. 2007)).

   1.   *Absence of Meaningful Choice*

Plaintiffs argue that they were denied meaningful choice because the loan documents comprised adhesion contracts. "An adhesion contraction is a standard for contract offered on a take-it-or-leave-it basis with terms that are not negotiable." *Simpson*, 644 S.E.2d at 669 (internal

7

citations omitted). Adhesion contracts, however, are not per se unconscionable. The existence of an adhesion contract is merely the beginning point of the analysis. *Lackey v. Green Tree Fin. Corp.*, 498 S.E.2d 898, 902 (S.C. Ct. App. 1998). "In determining whether a contract was tainted by an absence of meaningful choice, courts should take into account the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; [and] the parties' relative sophistication . . . ." *Simpson*, 644 S.E.2d at 669 (determining an automobile loan was an adhesion contract and the plaintiff lacked meaningful choice as automobiles are a "necessity in modern society") (internal quotation marks and citation omitted).

Here, the agreement was for a real estate loan. Although this was Edens' first experience dealing with residential, rather than commercial, real estate, he is a sophisticated businessman. Further, as noted by Edens, this was not a contract that he was required to enter into. Defendants approached Plaintiff Edens to take over the Project as a favor to Defendants. Plaintiffs do not meet the first element of unconscionability.

    2.    *Oppressive, One-Sided Terms*

Plaintiffs next argue that the contract contains oppressive and one-sided terms governing arbitration. Plaintiffs specifically argue that the following contract term is oppressive:

> [T]he parties shall not have a remedy of punitive or exemplary damages against the other in any Dispute and hereby waive any right or claim to punitive or exemplary damages they have now or which may arise in the future in connection with any Dispute whether the Dispute is resolved by arbitration or judicially.

ECF No. 9 at 8. Plaintiffs point to no other terms as oppressive.

"In analyzing claims of unconscionability of arbitration agreements, the Fourth Circuit [Court of Appeals] has instructed courts to focus generally on whether the arbitration clause is

8

geared towards achieving an unbiased decision by a neutral decision-maker." *Simpson*, 644 S.E.2d at 668 (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)). Rules that "undermine the neutrality of the proceeding" are considered to be oppressive and one-sided. In *Simpson*, the South Carolina Supreme Court found that a term limiting double or treble damages required under SCUTPA was oppressive. 644 S.E.2d at 671; *see see also York v. Dodgeland of Columbia, Inc.*, 749 S.E.2d 139, 150 (S.C. Ct. App. 2013).

The damages provision portion of the arbitration provision merely limits punitive damages, not statutorily required damages. Accordingly, this case is distinguishable from *Simpson* and *York*. Importantly, the limitation goes to both arbitration and judicially determined awards, and the terms of the arbitration provision applies equally to both Plaintiffs and Defendants. The court finds that the arbitration provision is not unconscionable. The arbitration clause set forth in the loan documents is enforceable with respect to the First through Eighth Causes of Action.

E.  Whether the Arbitration Clause Applies to Edens

Edens asserts that he is not personally bound by the arbitration clause because he executed the loan documents as manager of Battery Creek. The court disagrees. Defendants handed up at the hearing an Unconditional Guaranty signed by Edens on or about September 9, 2009. The Unconditional Guaranty references loans of $3,000,000 and $1,150,000 from NBSC to Village at Battery Creek, LLC, and provides that NBSC is unwilling to make the loans "unless it receives an unconditional and continuing joint and several guaranty from JOE EDENS (the 'Guarantor') covering all 'Obligations of Borrower[.]'" The "Obligations of Borrower" include punctual payment of all principal, interest, and other amounts due or to become due "under the Notes and all lien documents securing the Notes . . . and including all renewals, extensions and/or modifications thereof, plus all interest, costs and reasonable attorneys' fees of Lender[.]"

9

In paragraph 21 of the Unconditional Guaranty is arbitration language substantially similar to the language set forth in the loan documents for the Project. The arbitration clause provides that "ANY DISPUTE, CLAIM OR CONTROVERSY ('DISPUTES') ARISING OUT OF, CONNECTED WITH OR RELATING TO THIS GUARANTY OR ANY OTHER LOAN DOCUMENTS SHALL BE RESOLVED BY BINDING ARBITRATION AS PROVIDED HEREIN." The court concludes that Edens is bound by the arbitration clause in the Unconditional Guaranty that refers and relates to disputes arising under the loan documents.

## CONCLUSION

For the foregoing reasons, Defendants' motion to stay proceedings and compel arbitration is GRANTED IN PART AND DENIED IN PART. The within action is stayed for arbitration as to the First through Eighth Causes of Action only. Defendants' motion is denied as to the Ninth Cause of Action. The Tenth and Eleventh Causes of Action for injunctive relief are DENIED AS MOOT, as this relief may be considered by the arbitrator.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
Senior United States District Judge

November 1, 2017

Columbia, South Carolina